CARL D. WATKINS AND CLIFFA F. WATKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Watkins v. Commissioner
Docket Nos. 15512-91, 24853-91
United States Tax Court
T.C. Memo 1994-35; 1994 Tax Ct. Memo LEXIS 32; 67 T.C.M. (CCH) 2054; January 26, 1994, Filed *32 For petitioners: Byron Calderon. For respondent: Steven B. Bass. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Docket No. 15512-91: Additions to Tax
Sec.
Sec. Sec. Year
Deficiency
6653(b)(1)
6653(b)(1)(A)
6653(b)(1)(B)
1987
$ 27,402
-- $ 20,552
n1
1988
19,429
$ 14,572
-- --
1 50 percent of the interest due on the portion of
the underpayment attributable to fraud.
Additions to Tax
Sec. Sec. Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661
1986
$ 10,535
$ 7,901
n1
$ 2,634
1 50 percent of the interest due on the portion of
the underpayment attributable to fraud.
The issues for decision are: (1) Whether petitioners had unreported income. We hold that they did. (2) Whether petitioners had business deductions in relation to the unreported income. We hold that they did not. (3) Whether petitioner Carl D. Watkins is liable for additions to tax for fraud pursuant to section 6653(b). [1] We hold that he is. (4) Whether respondent is precluded from assessing tax for the year 1986 *33 due to the running of the statute of limitations. Due to our holding in issue 3 above, we hold that she is not. (5) Whether petitioners are subject to substantial understatement penalties pursuant to section 6661 for tax years 1986 through 1988. We hold that they are. FINDINGS OF FACT Some of the facts have been stipulated. The stipulations of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioners resided in El Paso, Texas. Petitioners are married and filed joint income tax returns for all years at issue. References to petitioner in the singular are to Carl D. Watkins. Petitioners is a Certified Public Accountant (hereinafter C.P.A.) who graduated with honors from New Mexico State University with a bachelor of accountancy in 1977. *34 Petitioner was a member of Beta Alpha Psi, an honors accounting fraternity, and Phi Kappa Phi Honor Society. Upon graduation, petitioner was employed by a national accounting firm for approximately 1 year. Petitioner was then employed by an insurance agency as controller and accounting manager. [2] His responsibilities there included preparation of Federal, State, and local tax returns. In 1984, petitioner was employed by Rogers and Belding Corp. (hereinafter R&B) after R&B acquired another insurance agency. Petitioner had been employed by the acquired agency, and was hired by R&B as manager of the accounting department. Petitioner was responsible for all aspects of the R&B accounting department. In addition, in 1987, he was given authority to sign checks up to $ 1,000. Checks over $ 1,000 had to have two officers' signatures, one of which could be petitioner's. During his employment at R&B, petitioner became a corporate *35 shareholder, officer, and chief financial officer (hereinafter CFO). Toward the end of 1988, other corporate officers had become concerned about petitioner's personal acquisitions and behavior. Petitioner had purchased an expensive sports car and installed an inground pool, and exhibited slurred speech and confrontational behavior. Earlier in 1988, Mr. James Rogers, Jr., another corporate officer, approached petitioner with the idea of having a certified audit performed since the company had grown so large -- with $ 30-35 million in annual gross sales. Petitioner indicated the audit would be too expensive, and that he had the books in good shape. Petitioner resigned at the end of 1988. Because the company was losing an important financial officer, Mr. Rogers arranged for an audit of the company's books and records. He asked Mr. William Tippin, Jr. to begin this audit. Mr. Tippin found a check payable to petitioner for $ 8,000, written in April 1988. The documentation for the check was a convoluted set of journal entries that petitioner had authored. Upon being questioned, petitioner indicated he did not remember what the entries or the check were for. [3] Because of this *36 discovery, Mr. Tippin, with proper corporate permission, determined that the audit should be expanded. Once the audit was expanded, it was discovered that petitioner had on numerous occasions written checks to himself that were signed only by him and were lacking proper invoices showing the checks were written for actual R&B expenses. R&B had three-part checks -- the actual check and two accounting copies. Petitioner wrote checks payable to himself, but the accounting copies of those checks reflect other vendors' names. Anyone looking only at the company's accounting records would not be aware of the number of checks petitioner was writing to himself. One check was written to petitioner Cliffa F. Watkins for $ 950. She deposited the check in petitioners' joint checking account. The accounting copy of that check was hand-marked "VOID-not used." In addition, petitioner paid personal expenses through the R&B accounting system. [4]
*37 Upon further investigation, it was determined that petitioner had, without proper corporate permission, set up a number of advance or draw accounts on the R&B books through which petitioner charged approximately one-half of the funds he took from the company. Evidence revealed that petitioner would type an R&B check with the company's name, take the check to the company cashier, and have the cashier give him cash in exchange for the check. No evidence attached to the accounting copies of these checks showed that the money was used for a proper corporate purpose. Based on the investigation, R&B filed an insurance claim with their employee fidelity bonding company. [5] After investigation of this claim, the bonding company paid R&B approximately $ 188,000. Criminal charges were filed against petitioner and then dropped by R&B after petitioner filed multiple civil claims against the company. R&B decided it would be cost-prohibitive to pursue petitioner. Petitioner and R&B arrived at a compromise regarding the criminal and civil charges and petitioner's ownership in R&B corporation and various partnerships. The bonding company did not pursue any subrogation claims it might have *38 had against petitioner; the record does not reveal why this choice was made. Internal Revenue Service personnel audited R&B and petitioners. Petitioner initially met with the IRS agent assigned to petitioners' case, but upon further questioning, petitioner refused to cooperate with the IRS agent. Petitioner did not reveal all of the family's bank accounts to the IRS agent. On April 12, 1991, and July 30, 1991, respondent issued statutory notices of deficiency to petitioners. In the April 12, 1991 notice respondent determined deficiencies in and additions to petitioners' 1987 and 1988 Federal income tax in regard to unreported income. And, in the July 30, 1991, notice, respondent asserted deficiencies in and additions to petitioners' 1986 Federal income tax in regard to unreported income. OPINION *39 Issue 1. Unreported Income
The primary issue for our consideration is whether petitioners had unreported income in the amounts determined by respondent for the years at issue. [6] Petitioners assert that the transfers were primarily reimbursement of business expenses. Respondent asserts that the funds were embezzlement income and, therefore, petitioners were required to report the income in the year it was received. A taxpayer is required to maintain records sufficient to show whether or not he or she is liable for Federal income taxes. Sec. 6001. Gross income means all income from whatever source derived. Sec. 61. If a taxpayer refuses to cooperate in the ascertainment of income, the Commissioner *40 may use any reasonable means to reconstruct the taxpayer's income and, in reconstructing the taxpayer's income, the Commissioner is not required to establish "mathematical exactitude". ; see also , affd. . Petitioners bear the burden of proving that respondent's determinations in the notices of deficiency are erroneous. Rule 142(a). It is well settled that money obtained by means of embezzlement constitutes income to the perpetrator. Money received without recognition of an obligation to repay and without restriction as to its disposition is taxable when it is received, even though the taxpayer may be required to restore the money later. ; ; . There is no requirement that there must be a prior judicial determination *41 that an embezzlement has occurred; the determination whether funds are taxable to the recipient is within the compass of this Court. See, e.g., , affd. ; , affd. ; . Petitioners did not maintain records regarding the numerous checks they received payable to themselves from R&B. They also chose not to subpoena records from R&B that they repeatedly claimed proved that petitioner was not guilty of embezzlement. Petitioners did not cooperate with the IRS agent as he conducted his examination of their Federal income tax returns. Furthermore, petitioners did not challenge R&B personnel when they testified that the checks received by petitioners were not substantiated as business expenses. Petitioners claim respondent's redetermination of their income was flawed and that respondent should have used a second method to confirm that the method she chose was *42 correct. If a second method was used, contend petitioners, respondent would have found that she was indeed incorrect in her determination of deficiency. We reject this argument. . Petitioners have the burden of proof regarding the deficiency. Rule 142(a); . They were free to choose an alternative method of reconstructing income to prove that the deficiency was incorrect. Petitioners chose instead to depend solely on their own unsubstantiated testimony. Additionally, petitioners assert that many of the checks received from R&B were simply employee advances or loans. However, they presented no signed notes or amortization schedules evidencing such debt. Furthermore, Mr. Rogers, an R&B officer, testified that petitioner was not given corporate permission to receive employee advances. Respondent concedes that petitioner signed over some of his paychecks to R&B, indicating some repayment of debt. However, the dollar amounts of the paychecks signed over were minor in comparison to the total amount of unsubstantiated *43 checks petitioner wrote to himself. Respondent's position is further supported by the fact that petitioners kept no independent records of the purported employee advances. [7]
Since there was no consensual agreement between R&B and petitioners respecting the repayment of these funds, no loan existed. See . Accordingly, we find that the amounts petitioners received from R&B are income. Respondent's determination of unreported income is sustained. Issue 2. Business Deductions
Petitioners assert that the checks from R&B were simply reimbursement of business expenses. Therefore, if the Court finds these were income items, petitioners contend they should be able to offset that income with various business expenses. No invoices were presented by petitioners to substantiate that the checks they received *44 from R&B were reimbursement for legitimate business expenses. The only proof petitioners presented were notations on the accounting copies of R&B checks, notations that petitioner, as CFO, controlled. Petitioner had ample opportunity to document his claim, either by keeping personal records as each transaction occurred or by obtaining copies of company records that were available to him. [8] We have considered the evidence and testimony and find it singularly unpersuasive. We are not required to accept a taxpayer's uncorroborated testimony, , affd. , and have no reason to accept petitioner's testimony in this case. Respondent presented testimony of an R&B officer, an R&B employee, and the C.P.A. who prepared the internal audit report. Those individuals testified that the *45 items petitioner claimed as reimbursement were not substantiated business expenses. In addition, respondent provided evidence that R&B's bonding company, after an independent examination, paid a substantial amount to settle the embezzlement claim. Despite ample opportunity to cross-examine these witnesses, petitioner chose not to dispute these claims with the witnesses. Furthermore, petitioners have not provided any evidence that they are entitled to any unclaimed deductions, credits, or exclusions. For the above stated reasons, we find petitioners' claims to be without merit. Cf. . Issue 3. Addition To Tax -- Fraud
Respondent determined that petitioner is liable for additions to tax for fraud under section 6653(b)(1)(A) and (B) for 1986 and 1987, and section 6653(b)(1) for 1988. For 1986 and 1987, section 6653(b)(1)(A) provided for an addition to tax in an amount equal to 75 percent of the underpayment that is attributable to fraud. Moreover, section 6653(b)(1)(B) adds to the tax an amount equal to 50 percent of the interest due on any part of the underpayment attributable to fraud. For 1988, *46 section 6653(b)(1) provided for an addition to tax in an amount equal to 75 percent of the underpayment that is attributable to fraud. For all years in question, section 6653(b)(2) states that if the Secretary establishes any portion of an underpayment is due to fraud, the entire underpayment is treated as fraudulent, unless the taxpayer proves some portion of the underpayment is not due to fraud. The existence of fraud is a question of fact to be determined on the basis of the entire record. , affd. without published opinion . The principal issue in ascertaining whether fraud is present is whether there has been an intentional wrongdoing on the part of the taxpayer with the specific intent to evade a tax known or believed to be properly owing. , affg. ; . The burden of proof with respect to the fraud issue is upon the Commissioner, to *47 prove, by clear and convincing evidence, that some part of the underpayment of tax was due to fraud with an intent to evade tax. Sec. 7454(a); Rule 142(b); . Where fraud is determined for more than 1 year, the Commissioner's burden applies individually to each year. (citing , affd. sub nom. . To satisfy her burden of proof, the Commissioner must show two things: (1) An underpayment exists, and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. ; . The Commissioner may prove an underpayment by proving a likely source of the unreported income, , *48 or, where the taxpayer alleges a nontaxable source, by disproving the specific nontaxable source so alleged, . The first element requires the Commissioner to establish the existence of an underpayment of tax. Section 6653(c) defines underpayment in essentially the same manner as a "deficiency" to mean the amount by which the tax imposed exceeds the amount of tax shown by the taxpayer on his return. Sec. 6211. To prove an underpayment, the Commissioner cannot satisfy her burden by relying solely on the taxpayer's failure to discharge his burden of proving error in her determinations of the deficiencies. . Respondent has proven petitioner received income from R&B that he did not report on his Federal income tax return. Petitioner asserted that those funds were reimbursement for legitimate business expenses. Respondent proved through testimony and documents that those funds were embezzlement income and not reimbursement for business expenses. Therefore, we find that respondent has discharged her burden of proof regarding the *49 first element. The second element requires the Commissioner to prove fraudulent intent on the part of the taxpayer. Fraud will never be presumed. . Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. ; . Courts have developed various factors or "badges" which tend to establish fraud. . These include: (1) A pattern of understatement of income; (2) inadequate records; (3) concealment of assets; (4) income from illegal activities; (5) attempting to conceal illegal activities; (6) implausible or inconsistent explanations of behavior; and (7) dealing in cash. ; , affd. *50 . Although fraud cannot be inferred from the mere understatement of income, consistent and substantial underreporting is evidence of fraud. , affg. . Repeated understatements in successive years, when coupled with other circumstances showing an intent to conceal or misstate taxable income, present a basis on which we may properly infer fraud. , affg. ; , affg. on this issue . Badges of fraud are present in this case. Petitioner understated his income for 3 years. He kept incomplete and inaccurate records, shown by the fact that the embezzlement income had to be reconstructed through R&B and petitioner's bank records. He made impausible explanations regarding his behavior, claiming that the C.P.A. told him to put other payees' *51 names on the accounting copies of company checks. Furthermore, he concealed his illegal activities regarding the embezzlement by altering company records, which proves his intent to mislead. See . Finally, one of the methods he used to perpetrate the embezzlement was dealing in cash transactions. Based on these badges of fraud, we find that respondent has proven by clear and convincing evidence that petitioner intended to evade taxes. Because petitioner willfully and knowingly intended to evade the payment of tax for all the years in issue, we sustain respondent's determinations as to the addition to tax for fraud under section 6653(b)(1)(A) and (B) for 1986 and 1987 and section 6653(b)(1) for 1988. Furthermore, we find that the full amount of the underpayment for each year is attributable to petitioner's fraud. Sec. 6653(b)(2). Respondent has conceded that petitioner Cliffa F. Watkins is not liable for fraud. In light of our holding relating to the additions to tax for fraud, we need not address respondent's alternative contentions. Issue 4. Statute of Limitations
Petitioners contend that respondent *52 is precluded from assessing tax for the year 1986 due to the running of the statute of limitations. We disagree. Section 6501(c)(1) provides for the assessment of tax at any time in the case of a fraudulent return. We have found fraud on the part of petitioner and, accordingly, the period for assessment remains open for petitioners. , affd. ; . Issue 5. Addition to Tax -- Substantial Understatement
The remaining issue is whether petitioners are liable for the addition to tax pursuant to section 6661. This section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. Sec. 6661(a). The taxpayers bear the burden of proving that the Commissioner's determination as to the addition to tax under section 6661(a) is erroneous. Rule 142(a). A substantial understatement of income tax exists in a year if the *53 tax understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); ; . The amount of the understatement on which the addition to tax is based will be reduced by that portion of the understatement which is attributable either to (1) a position adopted by the taxpayer for which substantial authority exists, or (2) any item with respect to which the taxpayer has made adequate disclosure of the relevant facts in the tax return or any statement attached thereto. Sec. 6661(b)(2)(B). In the case at hand, a substantial understatement exists for tax year 1986. Petitioners failed to present any substantial authority for their positions, as reflected in our prior findings. They did not adequately disclose any facts pertaining to the understated gross income on any of the tax returns as filed, or on any statements attached to such *54 returns. Therefore, we find petitioners liable for the section 6661 addition for tax year 1986. To reflect the foregoing, Decision will be entered under Rule 155 in docket No. 15512-91 and for respondent in docket No. 24853-91.
Footnotes
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. It is unclear from the record how long petitioner continued with that insurance agency.↩
3. Petitioner's salary was $ 50,000-75,000 per year for the years at issue.↩
4. Checks paying for petitioner's American Express bill, personal insurance bills, and the purchase of a car were all found in this investigation.↩
5. R&B employed an unrelated C.P.A. to review Mr. Tippin's workpapers to insure that the investigation was properly documented. The bonding company also employed an unrelated investigator to examine the claim.↩
6. In briefs filed after trial, petitioners challenged and respondent conceded that three of the disputed checks for 1988 were unrelated to petitioner's embezzlement and do not constitute unreported income of petitioners for that year. For this reason, a computation under Rule 155 will be made for Docket No. 15512-91.↩
7. The amount of embezzlement income was reconstructed from R&B records and compared to petitioners' bank deposits.↩
8. As previously indicated, petitioners admitted that they did not attempt to subpoena R&B records for this trial.↩