SARATOGA ASSOCIATES, PROHASKA INVESTMENT COMPANY, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Saratoga Assocs. v. Commissioner
Docket No. 17551-88
United States Tax Court
T.C. Memo 1995-79; 1995 Tax Ct. Memo LEXIS 79; 69 T.C.M. (CCH) 1932; February 22, 1995, Filed *79 James J. Prohaska, pro se. For respondent: John Aletta. ARMEN
ARMEN
MEMORANDUM OPINION ARMEN, Special Trial Judge: This matter is before the Court on petitioner's Motion to Dismiss for Lack of Jurisdiction on the ground that petitioner neither filed, nor authorized the filing of, the petition herein. If we conclude that petitioner's motion should be denied, we must also address petitioner's contention that the statutory period of limitations expired before the notice of final partnership administrative adjustment (FPAA) was issued. [1]
Background
Some of the facts have been stipulated, and they are so found. At the time that the petition was filed, the principal place of business of Saratoga Associates was Medina, Ohio. During the years in issue, Saratoga Associates was a partnership, and all of Saratoga's *80 partners were general partners. For the sake of convenience, we shall refer to Saratoga Associates as either Saratoga or the partnership. At all relevant times, Saratoga's tax matters partner (TMP) was Prohaska Investment Co. In turn, Prohaska Investment Co. was essentially the alter ego of James J. Prohaska (Prohaska), who did business during the years in issue as Prohaska Investment Co. Accordingly, for the sake of convenience, we shall treat Prohaska as Saratoga's TMP and as the petitioner herein for purposes of this Opinion. Prohaska is a college graduate and a certified public accountant. During the years in issue, Prohaska was a Vice President of Finance and Administration and Operating Officer for a real estate development company. As such, he was responsible for the financial and administrative operations of that company. Thomas Graham (Graham) was Prohaska's investment adviser at the firm of Thomas A. Graham & Associates (Graham & Associates). It was through Graham that Prohaska first learned about Saxon Energy Corp. (Saxon). Saxon was a corporation formed in 1981 to lease energy management systems (also known as energy brains) to the public. [2] Graham, as a Saxon *81 promoter, received a commission from Saxon each time one of his clients entered into a lease with Saxon for an energy brain. Graham advised Saratoga's partners of anticipated tax benefits of investing in Saxon. Saratoga invested in Saxon by entering into leases for at least two energy brains in December 1983. Saratoga filed its Forms 1065 (Partnership Returns of Income) for 1983 and 1984 in a timely fashion. On each return it reported an ordinary loss attributable to its investment in Saxon. In addition, Saratoga attached to its partnership return for 1983 elections to pass investment tax credit from lessor to lessee. These elections were made in respect of the Saxon energy brains. In October 1984, Prohaska became aware that the Internal Revenue Service (IRS) was conducting an audit (the audit) of Saratoga's returns *82 for 1983 and 1984. On July 9, 1986, Prohaska, as TMP, executed Form 872-O (Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership) on behalf of Saratoga. The Form 872-O was executed on respondent's behalf on July 14, 1986. The Form 872-O extended the time to assess tax attributable to partnership items of Saratoga for the taxable year 1983. Specifically, the Form 872-O extended the period of limitations until the 90th day after respondent's office considering the case either received from the partnership or mailed to the partnership a Form 872-N (Notice of Termination of Special Consent to Extend the Time to Assess Tax Attributable to Items of a Partnership). The Form 872-O also provided that if respondent mailed an FPAA to the partnership, the period of limitations on assessment would be extended until one year after the determination of the partnership items became final. At various times, during which the parties agree that the period of limitations on assessment had not expired, Prohaska and other Saratoga partners discussed the audit with Graham. Prohaska and the other partners requested that Graham make inquiries regarding their investment *83 in Saxon, in which endeavor Graham acted on their behalf. Among other questions that these partners raised was whether the energy brains that Saratoga had leased had actually been installed. Graham discussed the IRS position in respect of investments in Saxon on a national level, and not simply in respect of Saratoga's investment. Graham did not prepare the Forms 1065 filed by Saratoga for the years in issue, nor did Graham file any power of attorney form (such as Form 2848) with the IRS that would have authorized him to represent Saratoga during the audit process. However, Graham did represent many other clients before the IRS who had invested in Saxon through him. On April 10, 1987, Prohaska mailed a Form 872-T (Notice of Termination of Special Consent to Extend Time to Assess Tax) to respondent's Cincinnati Service Center. [3] The Form 872-T was never received by either the Cincinnati Service Center or by the Cleveland District Examination Division, which was the IRS office considering Saratoga's case for 1983 and 1984. *84 Later that year, on August 17, 1987, a letter (the August 17th letter) was mailed to all of the Saxon investors (collectively, the Saxon Investors) who were clients of Graham. The August 17th letter was addressed "Dear Saxon Investor" and was signed by Graham. Attached to the August 17th letter was a copy of a letter from John N. Moore (Moore), an attorney, to Graham setting forth Moore's view regarding the Saxon examination. The text of the August 17th letter read as follows: Please find enclosed a copy of a letter that I received from our attorney John Moore regarding the I.R.S.'s current Saxon position. As I have stated before, I do not believe this settlement offer is in your best interest, and therefore I have retained counsel to represent our case before the I.R.S.. There will be no additional charge for Mr. Moore's services to any of you. * * * Please take time to review it to familiarize yourself with the issues involved. [Emphasis added.]
After "30 day letters" were issued by the IRS, a meeting was held to which all of the Saxon Investors were invited. Graham and Moore spoke at that meeting, and Moore indicated his willingness to file petitions in *85 this Court, upon receipt of a payment to cover the $ 60 filing fee, on behalf of taxpayers who received either notices of deficiency (notices) or FPAA's reflecting Saxon adjustments. Many investors sent their notices or FPAA's and payments to Moore and petitions were filed on their behalf. If Moore received a notice or an FPAA without an accompanying payment, he sent the notice or FPAA to Graham. Sometimes Moore would send an unfiled petition to Graham with the notice or FPAA. A letter dated July 13, 1988, signed by Graham and addressed "Dear Client", read in part as follows: Enclosed is a copy of the petition filed on your behalf with the United States Tax Court. * * * If you had not sent this office your $ 60 check, Graham and Associates paid your filing fee. However, we are advised by our Tax Attorney, Mr. John Moore, that we must be reimbursed for these fees in order not to present a conflict of interest. * * *
On April 12, 1988, respondent sent an FPAA for the taxable years 1983 and 1984 to petitioner. The FPAA was addressed "Prohaska Investment Co., Tax Matters Partner" and was mailed by respondent to Prohaska's personal address. The petition in this case was *86 filed on July 11, 1988, by Moore. Moore is, and was at the time that the petition was filed, an attorney admitted to practice before this Court. Attached to the petition is a certificate of service which reads as follows: This Petition for Readjustment of Partnership Items has been served by regular mail, this 6 day of July, 1988, on all partners of the Partnership. The Partners so served, with their addresses are as follows:
Prohaska's name and correct mailing address were among those set forth in the certificate of service. The petition, which was mailed from Graham's office, was captioned by Moore as "PROHASKA INVESTMENT CO., Tax Matters Partner, Saratoga Associates, PETITIONERS" and was signed by Moore as "Attorney for Petitioners". Attached to the petition is the original FPAA that was issued by respondent to "Prohaska Investment Co., Tax Matters Partner". On July 23, 1990, Prohaska included the Tax Court docket number assigned to this case on correspondence to respondent's counsel (the July 23, 1990 letter). However, in a subsequent letter to respondent's counsel dated January 25, 1993, Prohaska expressed surprise that the case had been docketed in this Court *87 and denied that Moore had been authorized to file the petition. As previously stated, respondent issued the FPAA for the taxable years 1983 and 1984 to Prohaska as Saratoga's TMP on April 12, 1988, at Prohaska's personal address. Two years later, on April 14, 1990, Prohaska mailed a Form 872-N to respondent's Cincinnati Service Center. Petitioner contends that the Court lacks jurisdiction to consider the substantive issues in this case related to Saratoga's investment in the Saxon energy brains because: (1) Moore was never authorized to file a petition on Saratoga's behalf; and (2) the petition that was filed was never ratified by Saratoga. Independent of the jurisdictional issue, petitioner also contends that the FPAA was mailed after the expiration of the period of limitations. Discussion of Jurisdiction
There is no question that this Court can proceed in a case only if it has jurisdiction; there is also no question that either party may question jurisdiction at any time. Estate of Young v. Commissioner, 81 T.C. 879, 880-881 (1983). Petitioner has questioned the Court's jurisdiction on the ground that petitioner neither filed, nor authorized *88 the filing of, the petition herein. The jurisdiction of this Court over a partnership action is limited by statute and attaches only upon the issuance of a valid FPAA and the timely filing of a petition by either the tax matters partner or a notice partner. Secs. 6223(a)(2), 6226(a) and (b); [4]Government Arbitrage Trading Co. v. Commissioner, T.C. Memo. 1994-136; Dalco Micro-Fab Partners, Ltd. v. Commissioner, T.C. Memo. 1993-100. As a general rule, "This Court does not have jurisdiction to consider a petition filed by a person or entity not qualified by law." Mishawaka Properties Co. v. Commissioner, 100 T.C. 353, 362 (1993), (quoting 1983 Western Reserve Oil & Gas Co. v. Commissioner, 95 T.C. 51, 62 (1990), affd. without published opinion 995 F.2d 235 (9th Cir. 1993), and cases cited therein).
*89 As we stated in Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177, 179 (1960), "questions of jurisdiction are fundamental and whenever it appears that this Court may not have jurisdiction to entertain the proceeding that question must be decided." We have jurisdiction to determine jurisdiction. Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1002 (1978). Accordingly, we must decide whether we have jurisdiction before considering either petitioner's affirmative defense or any of the substantive issues in this case. The FPAA for the years in issue was mailed to Prohaska on April 12, 1988. The petition in this case was filed on July 11, 1988. The petition was therefore filed within 90 days of the date the FPAA was mailed. Only a TMP, or the TMP's agent, is authorized to file a petition during the 90 days after the mailing of the FPAA. Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 232 (1990); Computer Programs Lambda, Ltd. v. Commissioner, 89 T.C. 198, 205 (1987). The petition was filed by Moore, purportedly as attorney for *90 petitioner. Therefore, the petition is valid only if Moore was authorized by petitioner to file the petition or if petitioner ratified the petition after it was filed by Moore. Mishawaka Properties v. Commissioner, supra.
Whether the filing of the petition by Moore was authorized or ratified is a question of fact. Kraasch v. Commissioner, 70 T.C. 623, 627-629 (1978). "Authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him to so act on the principal's account." Lyon v. Commissioner, T.C. Memo. 1994-35 (quoting 1 Restatement, Agency 2d, sec. 26 (1958)). There is ample evidence to support our conclusion that Moore was authorized to file the petition on petitioner's behalf. We view as persuasive on this point the fact that the original FPAA mailed to Prohaska at his personal address was attached to the petition. We find that the FPAA was provided by Prohaska to Moore either directly or through Graham. Although there was testimony at trial that Moore was *91 engaged to represent only those of the Saxon Investors who desired his services, the August 17th letter was sent to all of the Saxon Investors. Moreover, the August 17th letter indicated that Graham had "retained counsel to represent our case before the I.R.S." and that there would "be no additional charge for Mr. Moore's services to any of [the Saxon Investors]." Because Moore had been engaged to represent the Saxon Investors, it would have been reasonable for him to understand that his receipt of an FPAA addressed to one of the Saxon Investors represented authorization for him to file a petition. See Lyon v. Commissioner, T.C. Memo. 1994-351. In considering whether Moore was authorized to file the petition, Prohaska has urged the Court to take into account the fact that Prohaska never signed an IRS power of attorney form authorizing such action by Moore. However, an IRS power of attorney form is not required in order for a party to be represented by counsel in this Court. Rule 24(a) provides that counsel admitted to practice before this Court, such as Moore, may "enter an appearance" simply "by subscribing the petition". Based upon the foregoing *92 facts and circumstances, we hold that Prohaska implicitly authorized Moore to file the petition in this case. Even if we were unable to conclude that Prohaska authorized Moore to file the petition on Prohaska's behalf, we think that there is ample evidence that Prohaska ratified Moore's filing of the petition. In this regard, we have held that a taxpayer can ratify a previously filed petition, even in the absence of express approval, through action or inaction implicitly approving the filing of the petition. Mishawaka v. Commissioner, supra;Kraasch v. Commissioner, supra.
Prohaska attempted to disavow the validity of the petition only after the time he thought that the period of limitations on assessment had expired. However, as in Lyon v. Commissioner, supra, the proper time for disavowing the validity of the petition would have been when Prohaska received the copy of the petition that was served on him on July 6, 1988. The first purported expression by Prohaska that he was unaware that a petition had been filed in response to the FPAA was in his letter to respondent's counsel dated January 25, 1993. In that letter, *93 Prohaska expressed surprise that the case had been docketed and denied that he or Saratoga had retained Moore or authorized Moore to file a petition in respect of the FPAA. However, as early as July 23, 1990, Prohaska included the Tax Court docket number assigned to this case on his correspondence to respondent's counsel. We find this persuasive evidence of the fact that Prohaska was aware that the case had in fact been docketed. At that time, Prohaska was not a stranger to the Tax Court, having previously been involved in at least one prior case in this Court. He would thus have been familiar with the concept of a docket number. Moreover, as a Vice President of Finance and Administration and Operating Officer for a real estate development company, responsible for the company's financial and administrative operations, we find it incredible that Prohaska would not have understood the significance of the docket number which appeared on the July 23, 1990, letter. As we observed in Lyon v. Commissioner, supra, "It was petitioner's duty to repudiate the * * * [petition] as soon as he learned of it if he had not authorized it." Thus, even if we were to accept Prohaska's testimony *94 that he never received a copy of the petition, by failing to repudiate the petition until at least 2-1/2 years after he was clearly aware that it had been filed, Prohaska ratified it because Prohaska "had the duty and [was] in a position to disaffirm any unauthorized acts * * * long before filing * * * [the] motion now before the Court." Kraasch v. Commissioner, supra at 628. Accordingly, we hold that the Court has jurisdiction to consider the merits of this case, and we therefore turn to the issue of whether the FPAA was mailed after the expiration of the period of limitations. Discussion of Statute of Limitations
We begin by noting that Saratoga's 1984 return was filed on April 15, 1985. Thus, even absent an extension of the period of limitations by Saratoga, the period of limitations for 1984 would not have expired until April 15, 1988. Sec. 6229(a). The FPAA was issued on April 12, 1988. Accordingly, the FPAA was issued before the expiration of the period of limitations for 1984. We also note that the period of limitations on assessment for 1984 has been extended not only by the issuance of the FPAA, but also by the filing of the petition. *95 Sec. 6229(d). The period of limitations on assessment for 1984 will therefore not expire until one year after the decision of this Court becomes final. Sec. 6229(d)(2). Turning now to the 1983 taxable year, absent an extension of the period of limitations by Saratoga, the period of limitations on assessment would have expired on April 15, 1987, almost a year before the FPAA was issued. However, the Form 872-O executed by the parties in July 1986 extended the period of limitations indefinitely. Petitioner contends that he revoked his consent to the indefinite extension either by: (1) Mailing the Form 872-T to respondent's Cincinnati Service Center on April 10, 1987; or by (2) mailing the Form 872-N to respondent's Cincinnati Service Center on April 14, 1990. The Form 872-O that was executed by petitioner and respondent expressly provided that the period of limitations would expire on the 90th day after respondent's office considering the case either received from the partnership or mailed to the partnership a Form 872-N. The purpose of providing a mechanism by which a taxpayer's consent to extend the period of limitations can be revoked is to provide the parties with a clear *96 understanding of the actions which will effectively revoke such consent and to ensure that the Commissioner is explicitly informed of the taxpayer's intent to revoke such consent. See Grunwald v. Commissioner, 86 T.C. 85, 89 (1986). Prohaska did not effectively revoke the partnership's consent to the indefinite extension of the period of limitations for 1983 by mailing the Form 872-T to respondent's Cincinnati Service Center because that was not one of the mechanisms set forth in the Form 872-O. Prohaska mailed the wrong form, and mailed it to an office other than the one considering the case, which action was insufficient to notify respondent that the partnership's consent was being revoked. See Bilski v. Commissioner, T.C. Memo. 1994-55; Scherr v. Commissioner, T.C. Memo. 1993-87. Finally, the Form 872-T was never received by respondent. Thus, the mailing of the Form 872-T on April 10, 1987, did not commence the running of the 90-day period as provided in the Form 872-O. Finally, Prohaska's mailing of the Form 872-N to respondent's Cincinnati Service Center on April 14, 1990, also *97 failed to effectively revoke the partnership's consent to extend the period of limitations. Of fundamental significance is the fact that the FPAA had previously been mailed on April 10, 1988. Therefore, the period of limitations for 1983 has been extended until 1 year after this Court's determination regarding the partnership items for that year has become final. Conclusion
In order to reflect the foregoing, An appropriate order will be issued.
Footnotes
1. If we do not have jurisdiction, we cannot consider any issue regarding the statute of limitations. Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 237-238↩ (1990).
2. The Saxon promotion was considered at length in Schillinger v. Commissioner, T.C. Memo. 1990-640, affd. by order 1 F.3d 954↩ (9th Cir. 1993).
3. Form 872-T is the form by which a taxpayer provides written notification to the IRS of the termination of Form 872-A (Special Consent to Extend the Time to Assess Tax).↩
4. Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩